**AUBURNDALE DEVELOPMENT CORP., Plaintiff,**

v.

**The FIRST NATIONAL BANK OF BOSTON, Defendant.**

Civ. A. No. 80–2448–C.

United States District Court,
D. Massachusetts.

Sept. 29, 1981.

Quinn Correa, Inc., Thomas F. Quinn, Plymouth, Mass., for plaintiff.

Roger B. Sherman, Hochberg & Schultz, Boston, Mass., for defendant.

Barry G. Skolnick, New York City, for Manhatten Life Ins. Co.

## MEMORANDUM

CAFFREY, Chief Judge.

This civil action was removed from Suffolk Superior Court pursuant to 28 U.S.C. § 1446. Jurisdiction of this Court is founded on 12 U.S.C. § 94. The matter is now before the Court on defendant's motion for summary judgment on the claim and counterclaim.

The plaintiff, Auburndale Development Corporation (Auburndale) seeks to invalidate a mortgage held by the defendant, First National Bank of Boston (Bank), on certain real estate located on Pearl Street in Brockton, Massachusetts (Brockton property). Auburndale alleges that the obligations secured by that mortgage have been paid in full.

Bank denies the allegation and seeks a ruling that a Note representing a direct obligation of Auburndale, another Note guaranteed by Auburndale, and an overdraft of Auburndale's checking account with Bank are all outstanding and past due, representing an aggregate indebtedness to Bank.

## I. *The Complaint*

Auburndale alleges that Bank on September 19, 1974, breached a construction loan agreement (Agreement) that Bank had with Auburndale for the development and construction of a housing project known as the Somerville Project; that the foreclosure by Bank of Auburndale's interest in the Somerville Project resulted in Bank having a surplus of $214,000.00, or that in any event Bank has been "fully paid off," and accordingly, the subsequent Brockton property mortgage is void "because the indebtedness which it originally secured has been paid in full."

Bank has moved for summary judgment pursuant to Fed.R.Civ.P. 56. The Rule provides: "... if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact ..." judgment "shall be rendered forthwith." Fed.R.Civ.P. 56(c). To withstand the motion for summary judgment, an adverse party must establish the existence of an issue of fact which is both "genuine" and "material." *Hahn v. Sargent,* 523 F.2d 461 (1st Cir. 1975).

Although the gravamen of Auburndale's complaint is not clear, Auburndale's apparent attempt to resurrect a stale contract claim does not raise issues of fact material to the claim properly before the Court. The Court's present inquiry is whether there are genuine issues of fact material to the validity of the Brockton property mortgage. That Auburndale breached the Agreement does not appear on the papers to be seriously in dispute. Assuming, however, that a genuine, material factual dispute exists on that question, its resolution nevertheless would not affect the outcome of this litigation, and is therefore not "material" for purposes of the motion for summary judgment. *See* 523 F.2d 461 at 464.

Nor does Auburndale raise genuine issues for trial on matters which are material to this litigation because it chose to rely on the formal allegations of the pleadings. The Bank on the other hand, by affidavit and internal memoranda, has detailed the full expenses relative to the foreclosure of Auburndale's interest in the Somerville Project. These documents contain specific records of accounts which establish that there was no surplus from the foreclosure, but rather a loss to Bank of $3,416.33. Auburndale's claim that the foreclosure resulted in a surplus of $214,000.00 is unsupported in the record and insufficient to create an issue for trial. Under the Rule "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). *See First National Bank of Arizona v. Cities Service*

*Company,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

On May 1, 1974 Bank's uncontested records also show that, prior to foreclosure on the Somerville Project property, Auburndale executed a Demand Note to the Bank in the sum of $10,000. Bank documents that it has made demand for repayment of that Note, but that Auburndale has failed to do so. Bank's records also show, and Auburndale does not deny, that on May 1, 1974, L.H. McIsaac Co., Inc. (McIsaac), executed a Demand Note to the Bank in the sum of $195,305.19. It is also undisputed that on March 12, 1975, Auburndale executed a Guaranty, guaranteeing payment to Bank of all past and future obligations of McIsaac. Bank has filed an affidavit to prove that McIsaac has filed bankruptcy and that the Note remains unpaid. Finally, Auburndale admits that on March 12, 1975, Auburndale executed and delivered to Bank the mortgage on the Brockton property at issue here, securing its obligations under the Guaranty, as well as all direct obligations of Auburndale to Bank.

Auburndale's claim that this mortgage is void for want of consideration can only be premised on its unsupported allegations that the McIsaac Note and the $10,000 Auburndale Note were actually paid subsequent to Bank's foreclosure of Auburndale's interest in the Somerville Project. As Bank's records reveal, there was no surplus to apply towards these obligations, even if, as alleged, there had been an oral agreement between Auburndale and Bank to do so. Auburndale tries to manufacture a real issue from the fact that the Notes were marked "paid". Auburndale offers nothing beyond the mere allegations of the pleadings, however, to contest either Bank's explanation of the stamping error or Bank's "control card" records, which document the absence of payments on these Notes by Auburndale or McIsaac after March of 1975. Moreover, in an affidavit filed by John R. McIsaac as treasurer of the Auburndale Development Company, plaintiff ultimately concedes that these obligations remained unpaid after the foreclosure of

Auburndale's interest in the Somerville Project, stating that Bank "promised to apply any profit to the indebtedness of Auburndale, which it did not do." Even after indulging all inferences favorable to Auburndale, McIsaac's concession renders further exploration of these facts at trial unnecessary.

The undisputed facts before the Court are that the mortgage on the Brockton property was executed by Auburndale to secure direct and indirect obligations of Auburndale which were and remain unpaid. I rule, therefore, that the mortgage on the Brockton property is amply supported by consideration, and that Bank is entitled to prevail on the claim as a matter of law. Accordingly, an order will enter granting defendant's motion for summary judgment and dismissing the complaint.

## II.  *Counterclaim*

██  Bank counterclaims on the basis of the Demand Note in the sum of $10,000 executed by Auburndale, the Demand Note in the sum of $195,305.19 executed by McIsaac (guaranteed by Auburndale), and an overdraft with Bank in the amount of $1,343.13.

Bank's documents and affidavit set forth the material facts concerning the Demand Notes and Guaranty, as previously described in the context of Auburndale's claim. Bank also sets forth the material facts concerning the overdraft: that on or about February 6, 1975, Auburndale overdrew its checking account in the amount of $1,343.13, which sum has not been repaid.

Auburndale's Reply does not dispute the allegations set forth in Bank's counterclaim, but rather reiterates the allegations of the Complaint that Bank breached the Agreement with Auburndale. Auburndale offers no contest to the overdraft, and it admits execution of the Note by Auburndale, the Note by McIsaac, and the Guaranty by Auburndale of McIsaac's obligations. As described above in the context of Auburndale's claim, Auburndale offers no specific facts to show the existence of any real issue material to Bank's counterclaim on the

Notes, and in fact, concedes that they have not been paid as alleged.

Summary judgment on the counterclaim is appropriate here, where the movant has shown that there are no genuine issues for trial and where the adverse party has offered no evidence to contest the facts before the Court. I rule, therefore, that Bank is entitled to judgment on the counterclaim as a matter of law. Accordingly, an order will enter granting defendant's motion and entering judgment for Bank in the amount of $208,721.42 plus interest accrued to date.